FILED

2016 Jul-28  PM 02:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| TERRI LYNN CRUCE CORDER, | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| v. | } | Case No.:  **2:14-cv-02133-RDP** |
| | } | |
| CITY OF BESSEMER, | } | |
| | } | |
| **Defendant.** | } | |

### MEMORANDUM OPINION

### I.      Introduction

This case is before the court on Defendant's Motion for Summary Judgment (Doc. # 25), filed February 24, 2016. The Motion is fully briefed. (Docs. # 26, 27, 31, 35). In this case, Plaintiff alleges violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, amended by the Civil Rights Act of 1991, and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.* Defendant contends Plaintiff has failed to establish a *prima facie* case and, in any event, cannot establish that Defendant's articulated reason for terminating her employment is a pretext. After careful review, and for the following reasons, the court determines Defendant's Motion is due to be granted.

### II.      Relevant Undisputed Facts[1]

Plaintiff, a white female, was hired by the City of Bessemer's (the "City" or "Defendant") Police Department on April 7, 1997, as a police officer. (Doc. # 27-1 at pp. 17-20,

---

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts that could be established through live testimony at trial. *See Cox v. Admr. U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

94-95). She later worked as a detective. (*Id.*). The City of Bessemer Police Department is subject to the rules and regulations promulgated by the Personnel Board of Jefferson County ("PBJC"). (Doc. # 27-4 at p. 1; Docs. # 27-5 – 27-6 at Bessemer 00232-301). The positions of police officer and detective are classified as Grade 17 under the PBJC Classification Plan.[2]  (Doc. # 27-6 at Ex. B; *see also* Doc. # 27-3 at pp. 83-84).

On the morning of June 3, 2010, Plaintiff fell as she was walking into work and sustained injuries to her left knee and right leg. (Doc. # 27-1 at pp. 24-27; Doc. # 31-3; Doc. # 31-4). She reported the fall to a supervisor later that day and was taken to Brookwood Hospital where she was seen by a physician and released back to work, but on light duty. (Doc. # 27-1 at pp. 26-28; *see also* Doc. # 31-4). Plaintiff returned to "work in the everyday fashion that [she] had been working" (that is, essentially and without dispute, full duty). (Doc. # 27-1 at p. 28). She claims to have experienced pain in both knees in January 2012, although she did not report the pain to her supervisor until four months later (on April 24, 2012). (*Id.*). Plaintiff went to see the City's authorized workers' compensation physician, Dr. Staudinger, who released her to full duty and determined that her injuries were not related to her June 2010 incident. (*Id.* at pp. 29-33; Doc. # 27-2 at Bessemer 00178).

Plaintiff was suspended for twenty working days starting in late August 2012, after Defendant concluded she improperly used the Law Enforcement Tactical System ("LETS"). (Doc. # 27-1 at p. 33; Doc. # 31-5). During that suspension she visited her personal doctor, Dr. Johnson, who recommended her work duties be restricted. (Doc. # 27-1 at p. 33; Doc. # 27-2 at Bessemer 00181). On September 10, 2012, still during the time she was suspended, Plaintiff

---

[2] Physical demands for a Grade 17 Police officer include "the ability to sit and stand for extended periods, occasional running over possible rough or uneven terrain in the apprehension of suspects, bending, stooping, crouching in possibly confined spaces, the physical agility to restrain individuals, the physical dexterity in the use of hand eye coordination and manipulative skills in use of fingers and limbs." (Doc. # 27-6 at Ex. B).

learned she had been reassigned from detective to patrol officer. (Doc. # 27-1 at p. 34-35; Doc. # 27-3 at pp. 91-92; Doc. # 27-4 at p. 2). On September 24, 2012, she returned to Dr. Staudinger who restricted her work activity to "No extended walking. No running. No squatting." (Doc. # 27-2 at Bessemer 00182). Plaintiff went to a third physician, Dr. Cowley, on October 16, 2012. Dr. Cowley released her to full duty. (*Id*. at Bessemer 00186). Despite that release, Plaintiff emailed Captain Graddis and claimed she was "not able to run, stand for long times or squat down or get on the knees." (*Id*. at Bessemer 00190). Accordingly, Plaintiff requested and was granted time off until she could see her doctor. (*Id*.; Doc. # 27-1 at p. 48). Plaintiff also emailed Chief Rutledge and Deputy Chief Roper, and stated that she was a liability to the city, fellow officers, and citizens due to her injury hindering her performance. (Doc. # 27-2 at Bessemer 00189). Chief Rutledge replied and stated that he had not received any order or documentation from her physician, and was looking forward to Plaintiff returning to work. (*Id*.).

On October 29, 2012, Plaintiff again saw Dr. Staudinger who determined that Plaintiff could not perform the essential functions of her job and restricted her to "primarily seated work, limited extended ambulation. No running." (*Id*. at Bessemer 00191). On October 30, 2012, upon receiving this information from Plaintiff's doctor, Chief Rutledge assigned Plaintiff to the warden's office to accommodate her restriction, and requested she submit further information on when she would be reevaluated and return to full duty. (*Id*. at Bessemer 00192; Doc. # 27-1 at pp. 55-56; Doc. # 27-4 at p. 3).

Plaintiff underwent knee surgery on November 21, 2012, and was cleared to return to work with sedentary work restrictions on December 3, 2012. (Doc. # 27-1 at pp. 59-61; Doc. # 27-2 at Bessemer 00193). Nevertheless, on December 1, 2012, she returned to work at the jail. (Doc. # 27-1 at pp. 61-62). Upon reporting to work, Plaintiff submitted a list of her prescribed

medications and was sent home by Captain Gaddis. (Doc. # 27-1 at pp. 61-64). It had been at least twelve hours since Plaintiff last took her medications. (*Id.* at p. 63). The City has a policy that an officer may not work under the influence of controlled substances. (*Id.*). Plaintiff was transferred to work in dispatch while she recovered from her surgery. (Doc. # 27-4 at p. 3). However, a dispatcher position is outside the Grade 17 classification of the PBJC's Classification Plan, (*id.*), and the PBJC rules required Plaintiff to first apply for the position of dispatcher. (*Id.*). No other Grade 17 positions were then open, and Plaintiff was placed on administrative leave without pay. (*Id.*; Doc. # 27-1 at pp. 64-65; Doc. # 27-2 at Bessemer 00008). Plaintiff received the December 7, 2012 Notice of Administrative Leave Without Pay from the PBJC and the City's Mayor, and was informed therein that she could apply with the Personnel Board to work in dispatch or other positions. (Doc. # 27-1 at pp. 65-68; Doc. # 27-2 at Bessemer 00008-09). She did not apply for any non-Grade 17 positions. (Doc. # 27-1 at pp. 68-69).

On January 2, 2013, both Dr. Staudinger and Dr. Johnson released Plaintiff back to work with no restrictions. (Doc. # 27-1 at pp. 71-72, 75; Doc. # 27-2 at PBJC_HRG000015, Bessemer 00198). Plaintiff reported to the police department on January 2, 2013, and met with Chief Rutledge. (Doc. # 27-1 at p. 77; Doc. # 27-3 at pp. 17-19). Chief Rutledge continued her administrative leave to "take care of her health." (Doc. # 27-3 at pp. 19-20). Plaintiff requested that she be permitted to use her accrued time off while on leave, and the City granted that request. (*Id.*; Doc # 27-3 at PBJC_HRG000016).

Chief Rutledge subsequently ordered Plaintiff to return to duty on March 9, 2013. (Doc. # 27-3 at PBJC_HRG000017; Doc. # 27-3 at pp. 22-26). Plaintiff acknowledged Chief Rutledge's order, but did not return to work on March 9. (Doc. # 27-1 at p. 85; Doc. # 27-2 at Bessemer 00203). Rather, she submitted a letter from Dr. Johnson expressing his opinion that Plaintiff "is

unable to return to patrol duty as a police officer" due to his concern about her ability to carry thirty pounds of equipment, and in light of his instruction of no running. (Doc. # 27-2 at Bessemer 00204; Doc. # 27-1 at p. 85-87). Dr. Johnson's statement was the first documentation the City received about Plaintiff's ability to work since January 2, 2013. (Doc. # 27-3 at pp. 29-30). Plaintiff also returned to Dr. Staudinger (as required by Personnel Board Rules) for a fitness for duty exam. (Doc. # 27-1 at pp. 87-88). Dr. Staudinger observed that Plaintiff has degenerative arthritis of the left knee, and opined that she "[c]annot perform the essential job functions" of police officer. (Doc. # 27-2 at Bessemer 00205; Doc. # 27-1 at pp. 88-90).

Chief Rutledge issued to Plaintiff a Notice of Contemplated Disciplinary Action dated March 27, 2013, which informed her disciplinary action was being contemplated against her for violating Rule 12.2(o) of the Rules and Regulations of the PBJC due to her inability to perform her essential job functions. (Doc. # 27-2 at Bessemer 0004). On April 1, 2013, the City held a disciplinary hearing that Plaintiff attended with an attorney. (Doc. # 27-1 at pp. 91-96). Plaintiff presented no written or oral response and no medical evidence suggesting that she could perform the duties of her position. (*Id.*). Following the hearing, and upon Chief Rutledge's recommendation that Plaintiff's employment be terminated, City Mayor Gulley issued an April 10, 2013 Notice of Employee Disciplinary Action terminating Plaintiff because she was no longer able to perform the duties of her job as a police officer. (Doc. # 27-2 at Bessemer 00001-02). Plaintiff has admitted she was not able to perform the duties of a patrol officer at the time of her termination. (Doc. # 27-1 at p. 100). From September 10, 2012, until the time of her termination, Plaintiff had not worked a single day on patrol. (*Id.* at pp. 97-100).

Plaintiff applied for disability retirement from the Retirement Systems of Alabama ("RSA") on January 24, 2014. (Doc. # 27-1 at p. 118; Doc. # 27-2 Bessemer 00212-19). In

support of her retirement application, Plaintiff provided a statement from her physician stating that she was "totally incapacitated for further performance of his/her duty," her disability was permanent, and it was "unknown but doubtful" as to whether there were any accommodations that could be made to allow her to continue her employment. (Doc. # 27-2 at Bessemer 00214-15; Doc. # 27-1 at pp. 119-20). The Medical Board approved her application for disability retirement. (Doc. # 27-1 at pp. 120-21; Doc. # 27-2 at Bessemer 00220). Plaintiff also filed for Social Security disability benefits in 2013, but that application was denied. (Doc. # 27-7). In her Social Security filing, Plaintiff asserted she had a disability onset date of December 5, 2012, and was totally disabled from performing any substantial gainful activity. (Doc. # 27-7 at pp. 2, 13).

## III.     Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56(c) requires the non-moving party to go beyond the pleadings and -- by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file -- designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts

and all justifiable inferences are resolved in favor of the non-movant.  *See Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations."  *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997).  As *Anderson v. Liberty Lobby, Inc.*, teaches, under Rule 56(c) a plaintiff may not simply rest on her allegations made in the complaint; instead, as the party bearing the burden of proof at trial, she must come forward with at least some evidence to support each element essential to her case at trial.  *See Anderson*, 477 U.S. at 252.  "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [her] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'"  *Id.* at 248 (citations omitted).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp.*, 477 U.S. at 322.  "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative."  *Sawyer v. Southwest Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue

for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Sawyer*, 243 F. Supp. 2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

## IV.   Analysis

Defendant advances two arguments in support of its summary judgment motion. Its first argument is twofold. It asserts that (1) Plaintiff cannot establish a *prima facie* case of race or gender discrimination, and (2) the reasons articulated for her discharge are not pretextual, but were legitimate and non-discriminatory. Defendant also argues that Plaintiff cannot establish a *prima facie* case on her claim of disability discrimination. Again, this argument has two components: Plaintiff (1) is not a qualified individual as defined by the ADA, and (2) even if Plaintiff could establish otherwise, she has failed to show there were reasonable accommodations that would allow her to fully perform her job duties. The court addresses these arguments and Plaintiff's claims below, in turn.

### A.   Plaintiff Has Failed to Establish a Genuine Dispute of Material Fact with Respect to Her Race/Gender Discrimination Claims

Plaintiff claims she was terminated because of her race and gender. Both race and gender claims are governed by Title VII. An employee bringing a discrimination claim must generally establish a *prima facie* case of discrimination using one of three methods: by presenting direct evidence of discriminatory intent, presenting circumstantial evidence of discrimination by satisfying the analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny, or by introducing some other type of evidence raising an inference of discrimination.

*Sanders v. City of Montgomery*, 319 F. Supp. 2d 1296, 1311 (M.D. Ala. 2004) (citing *Walker v. NationsBank of Florida, N.A.*, 53 F.3d 1548, 1556 (11th Cir. 1995)). Because Plaintiff has not presented any direct, statistical, or other circumstantial evidence of discrimination, the court analyzes her claims under *McDonnell Douglas*. Under this analysis, Plaintiff bears the burden of establishing a *prima facie* case of illegal discrimination. *McDonnell Douglas*, 411 U.S. at 802; *see also Walker*, 53 F.3d at 1556 (applying *McDonnell Douglas* to sex discrimination claim). The Eleventh Circuit has laid out the steps for establishing a *prima facie* case:

> [Plaintiff] must show that: (1) [s]he is a member of a protected class; (2) [s]he was qualified for the position; (3) [s]he suffered an adverse employment action; and (4) [s]he was replaced by a person outside h[er] protected class or was treated less favorably than a similarly-situated individual outside h[er] protected class.

*Maynard v. Bd. of Regents of Div. of Univs. Of Fla. Dep't of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1289 (11th Cir. 2003).

If a plaintiff raises a presumption of discrimination by establishing a *prima facie* case, the burden shifts to the defendant to articulate legitimate, nondiscriminatory reasons for the challenged employment action. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997) (citing *McDonnell Douglas*, 411 U.S. at 802). "If [Defendant] carries its burden or producing legitimate, nondiscriminatory reasons for its decision, the presumption of discrimination created by the *McDonnell Douglas* framework 'drops from the case.'" *Id.* (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981)). The burden then shifts back to Plaintiff to present evidence that Defendant's reasons are pretextual. *See id.* (citing *Burdine*, 450 U.S. at 256; *McDonnell Douglas*, 411 U.S. at 804).

### 1.     Plaintiff Has Failed to Establish a *Prima Facie* Case of Discrimination

For purposes of this opinion, the court assumes Plaintiff has established that she is a member of a protected class and suffered an adverse employment action via termination.

However, the court concludes that Plaintiff has failed to show that she was qualified for her position. Moreover, even if Plaintiff could show she was qualified, she has not identified any similarly situated comparators outside her protected groups who were treated more favorably. The court addresses these failings, in turn.

        **a.**        **Plaintiff Has Not Shown She Was Qualified for the Position at Issue**

Plaintiff has failed to show she was capable of performing the physical requirements of a Grade 17 Police Officer. (*See* Doc. # 27-6 at Ex. B). Defendant (through Chief Rutledge) has noted that an individual not qualified as a Grade 17 Police Officer would also not be qualified to work in any special assignments either, and there is nothing in the Rule 56 record which refutes that point. (Doc. # 27-4 at p. 2). In March 2013, Plaintiff's physician, Dr. Johnson, expressed his opinion that Plaintiff was unable to return to full patrol duty as a police officer—a Grade 17 position.[3] (Doc. # 27-2 at Bessemer 00204). (*See also* Doc. # 27-4 at p. 2 ("Regardless of his/her particular assignment, each officer must first be qualified as a Grade 17 Police Officer."); Doc. # 27-6 at Ex. B (Grade 17 requirements and positions); Doc. # 27-3 at pp. 43-45 (patrol officers, desk officers, detectives, and other police officer positions require same minimum physical response modes). On March 15, 2013, Dr. Staudinger also certified that Plaintiff could not perform the essential job functions of a police officer. (Doc. # 27-2 at Bessemer 00205). Finally, Plaintiff has conceded that she was unable to perform her essential duties as a patrol officer at the time of her termination, and never worked a single day on patrol during the time period of September 2012 through her termination. (Doc. # 27-1 at pp. 97-100). She therefore has not shown she was qualified for a Grade 17 position.

---

[3] Dr. Johnson eventually released Plaintiff to return to work, but with restrictions preventing her from running or lifting more than 15-20 pounds on a regular basis. (Doc. # 27-2 at Bessemer 00204).

**b.** **Plaintiff Has Failed to Identify Similarly Situated Comparators Outside the Protected Group Who Were Treated More Favorably**

Even if Plaintiff could show she was qualified for the position of police officer (and, to be sure, she has not), she has failed to establish that she was treated less favorably than any similarly situated black officer and/or male officer. For both race and gender discrimination claims, Plaintiff "and the employee she identifies as a comparator must be similarly situated in 'all relevant respects.'" *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004) (quoting *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)). "The comparator must be nearly identical to [Plaintiff] to prevent courts from second-guessing a reasonable decision by the employer." *Id.* (citing *Silvera v. Orange Cty. Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001)). "If [Plaintiff] fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." *Holifield*, 115 F.3d at 1562 (citation omitted).

Plaintiff asserts there are six comparators who were treated more favorably than her: Officers Richard Ferguson, Alex McGinnins, Herman Harris, and Justin Burmeister, Sergeant Johnny Nunnally, and Chief Rutledge himself. (Doc. # 3 at ¶¶ 48-53). The court addresses each one in turn.

Officer Ferguson is a white male assigned to the position of warrant officer. (Doc. # 27-4 at p. 3). He was assigned to that position before Chief Rutledge became the Chief of Police in 2003. (*Id.*). As a warrant officer, Ferguson serves warrants in the manner required by the specific circumstances at hand. (*Id.* at pp. 3-4). He also may be called upon to assist other officers in emergency situations. (*Id.* at p. 4). Warrant officer is a Grade 17 police officer position. (*Id.*). "Officer Ferguson is not disabled and he has never informed [Chief Rutledge] that he has any sort of disability that affects" his job performance. (*Id.*). He has never informed Chief Rutledge

that he cannot perform the physical demands of his job, and has never given Chief Rutledge any reason to doubt that he can perform his job as a Grade 17 officer. (*Id.*). As discussed above, Plaintiff is unable to perform the essential duties of a Grade 17 police officer. She simply is not similarly situated to Ferguson.

Office McGinnis, a black male, was a qualified Grade 17 Police Officer assigned to a patrol officer position until he retired January 1, 2013. (Doc. # 27-4 at p. 4). Plaintiff alleged that McGinnis had cancer and was allowed to work in the jail for more than a year while recovering from cancer surgery. (Doc. # 3 at ¶ 49). Chief Rutledge averred that he never assigned McGinnis to work in the jail as any type of accommodation, and, to the Chief's knowledge, McGinnis did not have cancer and never informed him of any cancer or other disability, or any other issue that affected his job performance. (Doc. # 27-4 at pp. 4-5). But even if Chief Rutledge is in error in making that assertion, there is no evidence that McGinnis was at any point unable to do the job in question. To the contrary, the evidence shows that Plaintiff could not perform the Grade 17 essential job requirements; in fact, she has conceded that she was unable to perform the essential job functions of a patrol officer. (*See* Doc. # 27-1 at p. 100). She is not similarly situated to Officer McGinnis.

Officer Harris, a black male, is assigned to work in the police department lobby and take reports from citizens. (Doc. # 27-4 at p. 5). "Because Officer Harris is assigned to the department lobby, he is regularly called to assist in combative situations that can arise during court," and may be called upon to assist other officers in an emergency situation. (*Id.*). He is qualified as a Grade 17 Police Officer. (*Id.*). Although he had hip surgery in 2011, he was released to full duty following it. (*Id.*). Chief Rutledge testified that he has never been informed that Harris cannot perform the requisite Grade 17 physical demands, and has no reason to doubt that Harris can

perform his essential job duties. (*Id.* at pp. 5-6). The evidence demonstrates that Plaintiff cannot. Thus, Harris is not a valid comparator.

Officer Burmeister, a white male, is currently a patrol officer, and is qualified as a Grade 17 Police Officer. (Doc. # 27-4 at p. 6). Plaintiff testified that when she was working at the jail, Burmeister broke his finger "and something else" while effectuating an arrest and was allowed to work dispatch during his recovery. (Doc. # 27-1 at p.105). Plaintiff was unaware whether Burmeister had to take a fitness for duty exam, never saw his medical records, and does not know if he applied for the dispatch job. (*Id.* at pp. 105-06). "It is the department's policy to offer light duty only to those employees who are injured on the job." (Doc. # 27-4 at p. 3). The Rule 56 evidence demonstrates that Plaintiff's knee issues were related to arthritis, not an injury suffered at work, and, in any event, that she could not perform the essential job functions of a police officer. (*See, e.g.*, *id.* at pp. 29-33; Doc. # 27-2 at Bessemer 00178; Doc. # 27-2 at Bessemer 00205; Doc. # 27-1 at pp. 88-90). *Cf. also Lathem v. Dep't of Children & Youth Servs.*, 172 F.3d 786, 793 (11th Cir. 1999) ("[T]he different application of workplace rules does not constitute illegal discrimination."). Chief Rutledge noted that Burmeister has never given any reason to doubt the Grade 17 qualifications, and nothing calls into question his fitness for duty. (Doc. # 27-4 at p. 6). Thus, even if Burmeister had been temporarily assigned to dispatcher due to a broken finger or some other work-related injury, he is still qualified for a Grade 17 position; Plaintiff is not. Burmeister and Plaintiff are not "nearly identical" and therefore not similarly situated. *Wilson*, 376 F.3d at 1091.

Finally, Sergeant Nunnally (a white male) and Chief Rutledge (a black male) are plainly not valid comparators because they are not Grade 17 Police Officers. (*See* Doc. # 27-4 at pp. 6-7). Chief Rutledge is classified as a Grade 34 employee, and Sergeant Nunnally is classified as a

Grade 20 employee. (*Id*.). Although the demands of Grade 20 and Grade 34 positions are not set forth in the Rule 56 record, these higher-grade positions clearly are not similar in "all relevant respects" to a Grade 17 position. *Wilson*, 376 F.3d at 1091. Moreover, and in any event, Plaintiff has neither presented nor seen any evidence showing that Sergeant Nunnally or Chief Rutledge were unable to perform their essential job functions. (*See* Doc. # 27-1 at pp. 106-108). Defendant has shown they were and are able to do so.[4] (*See* Doc. # 27-4 at pp. 6-7). Therefore, Plaintiff's Title VII claims fail as a matter of law because she has not established a *prima facie* case of race or gender discrimination.

### 2.    Plaintiff Has Failed to Establish that the City's Reason for Terminating Her Is a Pretext For Discrimination

Plaintiff's failure to establish a *prima facie* case is not the only reason her Title VII claims fail. Even if she had met burden of establishing a *prima facie* case of discrimination (and, to be clear, she has not), the City has articulated a legitimate, non-discriminatory reason for terminating her. Thus, any presumption of discrimination "drops from the case," *Combs*, 106 F.3d at 1528 (quoting *Burdine*, 450 U.S. at 256), and it is incumbent upon Plaintiff to show that the City's reasons are a pretext for discrimination.

Defendant's stated grounds for discharging Plaintiff are that she was not capable of performing essential job functions. (Doc. # 27-2 at Bessemer 00001). The Rule 56 evidence supports that articulated reason. Plaintiff herself expressed concern in an email to Chief Rutledge that she was a liability, not only to herself, but also to other officers and to the public, if she could not fully perform her essential job functions due to her injury. (Doc. # 27-2 at Bessemer 00189). Her expressed concern was followed by written statements from both Dr. Staudinger and Dr. Johnson that due to her injury, Plaintiff could not perform the essential job functions of a

---

[4] Chief Rutledge had knee surgery and was released back to full duty by his physician afterwards. (Doc. # 27-4 at p. 7). Sergeant Nunnally retired in April 2006 and is since deceased. (*Id.* at pp. 6-7).

Grade 17 Police Officer. (Doc. # 27-2 at Bessemer 00204-05). Defendant has thus articulated a legitimate, nondiscriminatory reason (safety) for discharge of Plaintiff. (*See also* Doc. # 27-6 at Bessemer 00278 (PBJC Rule 12.1 provides that an employee may be dismissed "for cause," which includes under Rule 12.2(o) the "[i]nability to perform the essential functions of the job with or without reasonable accommodation.").

Because Defendant has stated a legitimate, nondiscriminatory reason for Plaintiff's termination, "[t]o survive summary judgment, Plaintiff must come forward with evidence that Defendant's articulated legitimate, nondiscriminatory reason is merely a pretext for unlawful discrimination." *Nowlin v. Jones Intercable, Inc.*, 102 F. Supp. 2d 1364, 1371 (S.D. Ga. 2000) (citing *Burdine*, 450 U.S. at 256); *see also Combs*, 106 F.3d at 1528; *Diaz v. Transatlantic Bank*, 367 F. App'x 93, 96-97 (11th Cir. 2010).

> In order to show pretext, [Plaintiff] must "demonstrate that the proffered reason was not the true reason for the employment decision. . . . [Plaintiff] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."

*Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005) (quoting *Burdine*, 450 U.S. at 256). "

> In evaluating a summary judgment motion, "the district court must evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence."

*Jackson*, 405 F.3d at 1289 (11th Cir. 2005) (quoting *Combs*, 106 F.3d at 1538) (change omitted).

Here, Plaintiff has failed to show that Defendant's explanation for the decision to terminate her was mere pretext for discrimination. She has presented "conclusory allegations of discrimination, [but] without more, [those] are not sufficient to raise an inference of pretext or

intentional [race or sex] discrimination." *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 597 (11th Cir. 1987). Plaintiff admits that no one mentioned that she was terminated because of race, gender, or any other reason other than her ability to perform essential job functions. (Doc. # 27-1 at pp. 97, 109-12). She has not advanced any evidence to suggest race was a factor in her termination.  It simply is not enough for her to feel that "certain people" were given more favorable treatment than others or that she was not treated more favorably because she is not black. (*Id*. at p. 109).

Likewise, Plaintiff has not presented substantial evidence suggesting that gender played any role in her discharge.[5] As already explained, the persons with whom Plaintiff compares herself are simply not valid comparators. Moreover, even if any of those males who were Grade 17 Police Officers were accommodated because of injury or illness, the Rule 56 record does not suggest any of them (1) self-reported an inability to do their jobs, (2) submitted substantial medical documentation that they were unable to do their jobs, or (3) applied for disability benefits claiming they could no longer do their jobs. Again, Plaintiff is not similarly situated to Ferguson, McGinnis, Harris, or Burmeister in "all relevant respects." *Wilson*, 376 F.3d at 1091. The same is true for Chief Rutledge and Nunnally, neither of whom were a Grade 17 Police Officer.

Plaintiff has not demonstrated either that Defendant's stated reasons for her termination were not true reasons behind Defendant's decision to terminate her, or that race or sex discrimination played any role in the decision to terminate her employment. Therefore, even if Plaintiff had established a *prima facie* case, she had failed to establish that the stated reasons for

---

[5] Plaintiff believes female employees who do not participate in sexual activity with other officers are not given favorable treatment. (Doc. # 27-1 at pp. 111-12). Yet, the only person Plaintiff claims requested a favor from her was one Sergeant Edwards (who was not involved in the termination decision), and that was in 2007. (*Id*. at pp. 112-13). She admits that Chief Rutledge, Deputy Chief Roper, and Mayor Gulley (her immediate superiors at the time) never requested sexual favors from her. (*Id*. at pp. 113-14).

Defendant's decision to terminate were pretextual.  Therefore, Defendant's Motion for Summary Judgment on Plaintiff's Title VII claims is due to be granted.

**B.**    **Plaintiff Has Failed to Establish a Genuine Dispute of Material Fact with Respect to Her ADA Discrimination Claim**

Plaintiff also contends Defendant violated the ADA because it terminated her due to her disability, and failed to provide a reasonable accommodation for her disability. The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). To establish a *prima facie* case of discrimination under the ADA, a plaintiff must show that she (1) has a disability; (2) is a qualified individual; and (3) was subjected to unlawful discrimination because of her disability. *Holbrook v. City of Alpharetta, Ga.*, 112 F.3d 1522, 1526 (11th Cir. 1997) (citing *Morisky v. Broward County*, 80 F.3d 445, 447 (11th Cir.1996)).

**1.**    **Plaintiff Has Failed to Establish She is a Qualified Individual**

The term "qualified individual" is defined as

an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. For the purposes of this subchapter [of the ADA], consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.

42 U.S.C. § 12111(8). "Accordingly, an ADA plaintiff 'must show either that [s]he can perform the essential functions of h[er] job without accommodation, or, failing that, show that [s]he can perform the essential functions of h[er] job with a reasonable accommodation." *D'Angelo v.*

*ConAgra Foods, Inc.*, 422 F.3d 1220, 1229 (11th Cir. 2005)[6] (quoting *Davis v. Fla. Power & Light Co.*, 205 F.3d 1301, 1305 (11th Cir. 2000)).

> If the individual "is unable to perform an essential function of h[er] . . . job, even with an accommodation, [s]he is, by definition, not a "qualified individual" and, therefore, not covered under the ADA. In other words, the ADA does not require [the employer] to eliminate an essential function of [the plaintiff's] job."

*Id.* (changes in original). The ADA regulations provide in pertinent part that "essential functions means the fundamental job duties of the employment positions the individual with a disability holds or desires," but "does not include the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1).

Here, because she asserts claims under the ADA, Plaintiff bears the burden of showing she is a qualified individual. *D'Angelo*, 422 F.3d at 1229. She has failed to do so. Plaintiff has conceded that she is unable to perform the essential job functions of a patrol officer—a Grade 17 position. (Doc. # 27-1 at p. 100). Dr. Johnson and Dr. Staudinger both concluded she is unable to perform the essential job functions of a Grade 17 Police Officer. (*See* Doc. # 27-2 at Bessemer 00204-05). In addition, the restrictions Dr. Johnson suggested would not allow Plaintiff to perform the essential Grade 17 Police Officer job requirements. (*Compare* Doc. # 27-2 at Bessemer 00204 *and* Doc. # 27-6 at Ex. B).

Furthermore, Plaintiff applied for disability benefits from both the RSA and Social Security Administration (*i.e.*, SSDI Benefits). (Doc. # 27-1 at p. 122; Doc. # 27-2 at Bessemer 00212-20; Doc. # 27-7). The Supreme Court faced a similar situation in *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795 (1999), where an ADA plaintiff claimed to be qualified, but also applied for SSDI. There, the ADA plaintiff had received SSDI benefits upon a determination that

---

[6] The court recognizes that *D'Angelo* concerns the precursor term to the current version of 42 U.S.C. § 12111(8) (that is, "qualified individual with a disability"). A significant portion of the definition of that precursor term remains unchanged.

she was unable to work due to her disability. *Cleveland*, 526 U.S. at 799, 801-03. The Supreme Court held that "despite the appearance of conflict that arises from the language of the two statutes [the ADA and the Social Security Act], the two claims do not inherently conflict to the point where courts should apply a special negative presumption." *Id.* at 802. This is because, in significant part and like here, "if an individual has merely applied for, but has not been awarded, SDI benefits, any inconsistency in the theory of the claims is of the sort normally tolerated by our legal system." *Id.* at 805 (analogizing to the allowance under Federal Rule of Civil Procedure 8 of setting forth separate or alternative or hypothetical statements of a claim). However, the Supreme Court observed, some SSDI claims may genuinely conflict with an ADA claim, and still be subject to summary judgment. *Id*. at 805-806.

Here, Plaintiff's statements in her SSDI and RSA applications for disability benefits, including her physician's acknowledgement in her RSA application that she is "totally incapacitated for further performance of his/her duty" (Doc. # 27-2 at Bessemer 00214), and the claim that she is "totally disabled from performing any substantial gainful activity" in her SSDI application (Doc. # 27-7 at p. 16), negate her claim that she is a qualified individual under the ADA here. It is axiomatic that an individual must first be qualified to be a Grade 17 Police Officer before they can be assigned to patrol or any other Grade 17 assignment. (Doc. # 27-4 at p. 2; Doc. # 27-6 at Ex. 2). Again, here, Plaintiff has submitted a sworn statement to RSA from her physician stating that she could not perform her duties due to her disability, and that her disability was permanent. (*See* Doc. # 27-2 at Bessemer 00214). She claimed she was "totally disabled" in her SSDI application. (Doc. # 27-7 at p. 16). "[A]n ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim. Rather, she must proffer a sufficient explanation." *Cleveland*, 526 U.S. at 806. Plaintiff has not proffered

any explanation as to why, in light of the assertions made in her disability applications, she is able to perform the essential job functions of a Grade 17 Police Officer with or without reasonable accommodation. In other words, she has not provided an explanation as to why those statements do not contradict her claim that she is a qualified individual under the ADA. Therefore, Defendant is entitled to summary judgment because Plaintiff has failed to establish that she is a qualified individual under the ADA.

> **2.     Plaintiff Has Failed to Identify a Reasonable Accommodation That Would Allow Her to Perform Essential Functions of Her Job**

Even if Plaintiff could establish that she is a qualified individual (and, to be clear, she has not), in order to make out a *prima facie* case for a reasonable accommodation claim, Plaintiff must also show that she was denied an accommodation that was reasonable and would have allowed her to perform the essential functions of her job as a Grade 17 Police Officer. As the ADA provides in relevant part, en employer "discriminate[s] against a qualified individual on the basis of disability," by:

> not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.

42 U.S.C. § 12112(b)(5)(A). Reasonable accommodations include the following:

> job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations.

42 U.S.C. § 12111(9)(B).

Plaintiff was temporarily assigned to be a dispatcher; however, Chief Rutledge was later informed that he could not assign her to dispatch because it was outside the Grade 17

classification. (Doc. # 27-4 at p. 3). Plaintiff received notice of the PBJC Rules and was informed she could apply with the Personnel Board to work in dispatch; she did not apply. (*Id.*; Doc. # 27-1 at pp. 68-69; Doc. # 27-2 at Bessemer 00008). Plaintiff has argued she should be reassigned to the position of detective, but a detective position is a Grade 17 position and requires the same essential functions which Plaintiff admits she cannot perform. (*See* Doc. # 27-6 at Ex. B). Also, the detective position was not a vacant position (*see* Doc. # 27-4 at p. 2), and an employer is not required to create a new position, fill a non-vacant positon, or bump another employee from a position as accommodation under the ADA. *See, e.g.*, *Lucas v. W. W. Grainger, Inc.*, 257 F.3d 1249, 1256 (11th Cir. 2001) (citations omitted); *Holbrook*, 112 F.3d at 1527-28. Of note, in this case, Plaintiff received an accommodation. Defendant accommodated Plaintiff by providing extended leaves of absence to allow her to recover from her injury. However, Plaintiff was unable to make a recovery and has failed to identify any reasonable accommodation within the Grade 17 Police Officer classification she could have been offered. Therefore, Defendant is entitled to summary judgment because Plaintiff has failed to establish a *prima facie* case of discrimination under the ADA.

## V.      Conclusion

For all of these reasons, the court concludes that no question of material fact exists regarding Plaintiff's claims of discrimination under Title VII and the ADA, and Defendant is entitled to judgment as a matter of law. Therefore, Defendant's Motion (Doc. # 25) is due to be granted. A separate order will be entered.

**DONE** and **ORDERED** this July 28, 2016.

_____

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE